**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x

TERI R. SMITH, on behalf of herself and the :
class members described herein, :
 :
    Plaintiff, :
 : Case No. 6:18-cv-1329 (FJS/ATB)
    v. :
 : JURY TRIAL DEMANDED
CONDUENT EDUCATION SERVICES, :
LLC, f/k/a ACS, ACCESS GROUP, INC., and :
ACCESS FUNDING 2015-1, :
 :
    Defendants. :
-----------------------------------------------------------------x

## CLASS ACTION COMPLAINT

1. Plaintiff Teri R. Smith brings suit against Defendant, CONDUENT EDUCATION SERVICES, LLC, f/k/a ACS Educational Services, alleging that Defendant 1) breached and/or tortiously interfered with written agreements between the federal government and Plaintiff; and 2) violated various state and federal laws in connection with the servicing of Plaintiff's federal student loans. Plaintiff alleges the following upon personal knowledge as to herself, and upon information and belief as to all other matters based on, among other things, the investigation of her counsel.

## NATURE OF THE ACTION

2. Federal student loan servicers are entities that administer loans held or guaranteed by the federal government. These entities perform all tasks associated with loan repayment, such as collecting payments, responding to customer inquiries, providing loan documents, processing loan deferment and forbearance requests, and administering repayment plans. Among these plans are the various Income-Driven Repayment Plans ("IDR plans") offered by the federal government, which provide qualifying borrowers with relief from student loan debt by adjusting

1

their payments to a reasonably affordable amount based on income, occupation, and family size. Borrowers enrolled in IDR plans can apply to have their loans forgiven after a certain number of on-time payments.

3.      From 2003 to 2013, ACS Educational Services ("ACS") handled the servicing of federal direct loans – student loans held directly by the federal government – under a Department of Education ("DOE") contract worth an estimated $2 billion.

4.      ACS was acquired by the Xerox Corporation ("Xerox") on February 8, 2010, but continued to operate under the name "ACS."

5.      Because a large number of borrowers lodged complaints against ACS for improper servicing practices, DOE eventually transferred all federal direct loan accounts serviced by ACS to other loan servicers.  But as recently as 2017, ACS continued to service loans issued under the Federal Family Education Loan ("FFEL") program, which are made by private entities but guaranteed by the federal government.

6.      FFEL borrowers have recently complained to the Consumer Financial Protection Bureau ("CFPB") about difficulties dealing with ACS.  Between September 1, 2016 and August 31, 2017, the CFPB received 192 complaints from borrowers whose federal loans were improperly serviced by ACS.  *See* https://files.consumerfinance.gov/f/documents/cfpb_annual-report_student-loan-ombudsman_2017.pdf (last visited October 2, 2018).  Accordingly, the CFPB has designated ACS as one of the "companies with the most federal student loan complaints." *Id*.

7.      According to a 2017 report by the CFPB's Student Loan Ombudsman, ACS had the highest percentage of borrowers whose complaints were based on "problems dealing with [their] lender or servicer," accounting for 85% of all complaints lodged against ACS. *Id*.  Many

of these complaints involved borrowers seeking to enroll in or renew IDR plans, who were subjected to ACS's unfair practice of "denying, or failing to approve, IDR applications that should have been approved on a regular basis." *Id.*

8.      In November of 2016, ACS reached a settlement with the Attorney General ("AG") for the State of Massachusetts for the company's misprocessing of IDR applications. According to the AG's complaint, ACS either improperly rejected borrowers' IDR applications, failed to enroll them in IDR plans, or delayed processing of their IDR applications. This resulted in many borrowers being stuck with payments they couldn't afford.  Although a portion of the $2.4 million settlement was paid out as restitution to Massachusetts borrowers who were injured by these practices, borrowers from other states have yet to be compensated by ACS.

9.      On January 3, 2017, Xerox divested its holdings in ACS, which were transferred to a newly formed company named "Conduent Inc."  As part of this corporate reorganization, ACS was re-named Conduent Education Services ("CES").  CES is a Delaware LLC and a wholly-owned subsidiary of Conduent Business Services, which is itself a wholly-owned subsidiary of Conduent Inc.  CES maintains its principal place of business in Utica, New York.

10.      Despite the change in name, CES made little improvement in the quality of its loan servicing practices.  As of this writing, CES has an average of one out of five stars on Consumer Affairs based on 324 consumer reviews, many involving borrowers who have been injured by the aforesaid practices involving IDR plan enrollment and renewal.  *See* https://www.consumeraffairs.com/finance/acs.html (last visited October 2, 2018).

11.      Despite its poor performance as a loan servicer, CES continues to service FFEL program loans on behalf of various financial institutions. As of December 31, 2017, CES

3

serviced a FFEL portfolio of loans with an outstanding principal balance of approximately $ 5.2 billion.

12.     CES has continued in its failure to process IDR plan applications in accordance with federal law by unlawfully canceling the IDR plans of enrollees; failing to enroll applicants in IDR plans as required by federal law; and delaying the processing of IDR plan applications.

13.     The aforementioned practices have caused borrowers to suffer measurable financial harm when: (a) the duration of their loans was extended; (b) interest accrued on the principal balance of loans during unnecessary periods of deferment or forbearance; (c) monthly payments under IDR programs were billed at inaccurate levels; and (d) borrowers were charged additional fees due to the delay in processing their applications for IDR programs.  As a result, Plaintiff and the Classes have lost out on months or years of qualifying loan payments that would have brought them closer to loan forgiveness under their IDR programs, been overcharged, or been otherwise disadvantaged when they were unable to utilize federal programs designed to make their education more affordable.

14.     Based on the continuing complaints described by the CFPB and pervasive nature of the misconduct set forth herein, Plaintiff believes that further evidentiary support for her claims will be revealed after a reasonable opportunity for discovery.

## PARTIES

15.     Teri R. Smith is domiciled in, and a resident of, of the City of Crestview, Florida and a citizen of the State of Florida.  On July 12, 2004, she took out a FFELP consolidation loan, which combined multiple federal loans into a single loan. The consolidation loan is governed by a Promissory Note, a contract between Ms. Smith and the loan holder, Access Group.  The Promissory Note provides that it is to be governed by the Higher Education Act of 1965

4

("HEA") and other applicable federal statutes and regulations. It also provides that applicable state law may provide the borrower with other rights, remedies, and defenses in addition to those stated in the note. The terms of the Promissory Note are binding on ACS, who was an assignee of Access Group's servicing obligations set forth therein.

16.     Defendant, CES, formerly ACS, is a Delaware LLC and a wholly-owned subsidiary of Conduent Business Services, which is itself a wholly-owned subsidiary of Conduent Inc. CES maintains its principal place of business in Utica, New York, and its principal executive office at 2277 E. 20th Street, Long Beach, California 90810. ACS was Plaintiff's loan servicer for approximately eight years until it changed its name to CES. CES was Ms. Smith's loan servicer until April of 2018.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction over all claims in this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because this lawsuit has been brought as a class action on behalf of proposed classes each in excess of 100 members; the aggregate claims of the Class members exceed $5 million exclusive of interest and costs; and one or more of the members of each Class is a citizen of a different state than one or more Defendants.

18.     This Court has personal jurisdiction over CES because its principal place of business is located in this District, and also because a substantial part of the events or omissions giving rise to the unlawful conduct alleged in this Complaint occurred in this District.

19.     Venue is proper in this District pursuant to 28 U.S.C. § 139l(b) because a substantial part of the events or omissions giving rise to the unlawful conduct alleged in this Complaint occurred in this District. Namely, the CES office responsible for student loan servicing operations and correspondence with Ms. Smith is located in Utica, New York.

**SUBSTANTIVE ALLEGATIONS**

20.     The average annual cost of higher education in the United States has increased at a significantly greater rate than inflation for several decades. A recent study by the College Board shows that the inflation-adjusted cost of attending a private four-year, public four year, or public two-year institution has more than tripled since 1970.  See *Tuition and Fees and Room and Board over Time*, Table 2, (Released 2017), The CollegeBoard, available at https://trends.collegeboard.org/college-pricing/figures-tables/tuition-fees-room-and-board-over-time (last visited May 8, 2018).

21.     Students have increasingly come to rely on student loans to pay for their higher education.  The overwhelming majority of student loans in the United States are owned or guaranteed by the federal government through the U.S. Department of Education.  They come with an array of repayment options to fit a student borrower's short-term and long-term needs.

22.     The "standard repayment plan" for federal student loans is the default payment plan.  Under the standard repayment plan, monthly payments are calculated such that the borrower's balance is fully paid within 10-30 years. Many borrowers who cannot afford payments under the standard plan enroll in various IDR plans that offer significantly lower monthly payments.  For instance, under the "Income Based Repayment" plan, the borrower's monthly payments are capped at fifteen percent of discretionary income, and the remaining debt is discharged after twenty-five years of qualifying payments.  Under some IDR plans, monthly payments can be as low as zero dollars per month.

23.     When borrowers enroll in an IDR plan, the plan is effective for a one-year period. To renew the plan for each subsequent year, borrowers must annually recertify their income by providing their loan servicer with an IDR renewal application and proof of income.  *See* 34

C.F.R. §685.221(e)(3).

24.     Two to three months prior to the expiration of the IDR plan, the loan servicer must send the borrower a written notice of the "annual deadline" by which the borrower must recertify the plan in order to continuing making income-driven payments.  *See* 34 C.F.R. §685.221(e)(3)(i).  This notice must include the consequences of failing to renew the IDR plan by the stated deadline.  One of these consequences includes an increase in monthly payments from a low affordable amount to the amount dictated by the standard repayment plan. *See* 34 C.F.R. § 685.221 (e)(3)(ii). Additionally, any accrued interest is capitalized, or added to the borrower's principal loan balance, when an IDR plan is not timely renewed.  *See id*.

25.     In view of these consequences, federal law provides certain protections for borrowers enrolled in IDR plans.  First, when the borrower timely submits an IDR renewal application and proof of income, the loan servicer is prohibited from cancelling the borrower's income-driven payment amount while the request is being processed.  Rather, the loan servicer "must maintain the borrower's current scheduled monthly payment amount" until the request has been fully processed.  *See* 34 C.F.R. §685.221(e)(8)(ii).

26.     In contrast to IDR plans, which provide affordable monthly payments, borrowers may have their loans placed into forbearance status.  *See* 34 C.F.R. §685.205(a).  This allows borrowers to temporarily cease making payments altogether during periods of hardship.  *See id*. Forbearances, however, delay progress toward loan forgiveness and can be very costly for borrower.   This is because any unpaid interest that accrues during the forbearance gets "capitalized," or added to the borrower's loan balance.  *See id*.

### CLASS REPRESENTATIVE ALLEGATIONS – TERI R. SMITH

27.     In 2017, Teri R. Smith was enrolled in the Income-Based Repayment plan.  For the annual payment period beginning in 2017, Ms. Smith's monthly payment amount under the IBR plan was $16.27.  The plan was to remain in effect until May 13, 2018.  The annual deadline to renew the plan for the following year was April 13, 2018.

28.     On April 7, 2018, Ms. Smith timely submitted an IDR renewal application to CES.  The application was accompanied by a signed letter, which explained that Ms. Smith was an "independent consultant" with two clients, and that her "current gross monthly income" was $2,730.48.  In the letter, Ms. Smith detailed the exact dollar amount that she earned from both clients over the four most recent pay periods, and attached four pay stubs as proof thereof.  These documents, which fully satisfied Ms. Smith's income certification requirements under federal law, were received by CES on April 9, 2018.

29.     On or about April 12, 2018, CES sent a letter to Ms. Smith notifying that her IDR renewal application had been denied.  The letter falsely stated that Ms. Smith's IDR renewal application was not accompanied by a self-certifying letter reflecting her annual gross income. At or around this time, CES canceled Ms. Smith's income-driven payments and capitalized her accrued interest, adding thousands of dollars to her principal loan balance.  Because Ms. Smith had, in fact, provided all federally required proof of her gross income, these actions were taken in violation of federal law.

30.     On or about April 20, 2018, Ms. Smith's federal loans were re-assigned to Nelnet, who thereupon received Ms. Smith's loan documents from CES.  Because CES had already rejected Ms. Smith's IDR renewal application, Nelnet began billing Ms. Smith in the amount of $903.34 pursuant to the standard repayment plan.     Because Ms. Smith could not afford

payments in that amount, she was forced to place her loans into forbearance while she re-submitted proof of her gross income to Nelnet. As a result of this forbearance, $860.63 in accrued interest was capitalized, or added to Ms. Smith's principal loan balance.

31. It took several months to correct Defendant's erroneous denial of Ms. Smith's IDR application. During this period, Ms. Smith was unable to make qualifying payments toward loan forgiveness. This had the effect of extending the duration of her loans.

32. As a direct result of CES's unlawful denial of Ms. Smith's IDR application, she incurred thousands of dollars in improper fees and costs, and the point at which she will now become eligible for loan forgiveness under her IBR plan has been delayed by several months.

33. Ms. Smith's Promissory Note requires compliance with applicable federal law. Because the aforementioned actions were taken by CES in violation of federal law, they constitute a breach of, and/or intentional and tortious interference, with the Promissory Note.

CLASS ACTION ALLEGATIONS

34. Plaintiffs bring this action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2) and (b)(3) on behalf of the following proposed Classes:

BREACH OF CONTRACT CLASS

> All individuals with federal student loans serviced by CES who, at any time on or after a date six years prior to the filing of this action, were enrolled in an IDR plan, and timely submitted proof of their gross income with an IDR renewal application, which was erroneously denied.

TORTIOUS INTERFERENCE & NEGLIGENT MISREPRESENTATION CLASS

> All individuals with federal student loans serviced by CES who, at any time on or after a date three years prior to the filing of this action, were enrolled in an IDR plan, and timely submitted proof of their gross income with an IDR renewal application, which was erroneously denied.

9

## NEW YORK CLASS

All New York residents with federal student loans serviced by CES who, at any time on or after a date three years prior to the filing of this action, were enrolled in an IDR plan, and timely submitted proof of their gross income with an IDR renewal application, which was erroneously denied.

## CALIFORNIA CLASS

All California residents with federal student loans serviced by CES who, at any time on or after a date four years prior to the filing of this action, were enrolled in an IDR plan, and timely submitted proof of their gross income with an IDR renewal application, which was erroneously denied.

35.    The Classes exclude the Defendant and any entity in which Defendant has a controlling interest. Also excluded from the Class is the Judge presiding over this action, his or her law clerks, spouse, any other person within the third degree of relationship living in the Judge's household, the spouse of such person, and the United States Government.

36.    The Classes are composed of tens to hundreds of thousands (if not millions) of individuals and thus are so numerous that joinder of all members is impracticable.

37.    The Classes can be readily ascertained through the records maintained by Defendant and DOE.

38.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.

39.    Plaintiff's claims are typical of the claims of members of the Classes.

40.    As alleged herein, Plaintiff and members of the Classes sustained damages arising out of Defendants' common course of unlawful conduct.  The injuries and damages of each member of the Class were directly caused by Defendant's wrongful conduct in violation of the laws as alleged herein, and occurred in, and was directed from, this District.

41.     There are questions of law and fact common to the Classes, the answers to which will advance the resolution of the claims of all Class members.

42.     These and other questions of law and/or fact are common to the Classes and predominate over any questions affecting only individual class members, including, without limitation:

a.     Whether the Defendant has a common and pervasive practice of misprocessing applications for IDR plans;

b.     Whether Defendant's misprocessing of IDR plans caused injuries to Plaintiff and the Class by causing them to pay unnecessary interest, fees, and other charges;

c.     Whether Defendant's misconduct violates state consumer protection laws;

d.     Whether Defendant's misconduct violates state common law;

e.     Whether Defendant's misconduct constitutes a breach of, and/or tortious interference with, the Promissory Notes held by federal student loan borrowers.

43.     Plaintiff will fairly and adequately represent and protect the interests of members of the Classes. Plaintiff has no claims antagonistic to those of members of the Classes. Plaintiff has retained counsel competent and experienced in complex nationwide class actions, including all aspects of litigation. Plaintiff's counsel will fairly, adequately and vigorously protect the interests of members of the Classes.

44.     Class action status is also warranted under Rule 23(b)(3) because a class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the

duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication of claims by many class members who could not afford individually to litigate claims such as those asserted in this Complaint. The cost to the court system of adjudication of such individualized litigation would be substantial. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendant.

45.     Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## FIRST CLAIM FOR RELIEF
### (For Breach of the Promissory Note)

46.     Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

47.     This claim is brought on behalf of the Breach of Contract Class.

48.     By accepting a delegation of the loan servicing obligations set forth in Plaintiff's Promissory Note, CES become an assignee thereof.  Thus, at all relevant times, Plaintiff and members of the Class were in a contractual relationship with CES.

49.     The Promissory Note required CES to service the loans of Plaintiff in accordance with federal law.

50.     As set forth above, CES has materially breached the Promissory Note by failing to administer Plaintiff's loan in accordance with federal law.

51.     As a direct and proximate result of Defendant's material breach of the Promissory Note, Plaintiff and members of the Class have suffered the same sizeable damages, including, but not limited to (i) the difference in the amount paid under the standard

repayment plan versus the amount paid when enrolled, or re-enrolled, in an IDR plan; (ii) unpaid interest added to the principal balance of loans along with amounts accrued as a result of the capitalization of same; and (iii) the financial harm associated with delayed progress towards certain loan forgiveness programs.

52.     Alternatively, even if it is determined that the above misconduct did not constitute a breach of the express terms of the Promissory Note, it nonetheless constituted a breach of the covenant of good faith and fair dealing implied therein, resulting in the aforesaid damages.

## SECOND CLAIM FOR RELIEF
### (Tortious Interference with a Business Relationship)

53.     Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

54.     This claim is brought on behalf of the Tortious Interference and Negligent Misrepresentation Class.

55.     Plaintiff and members of the Classes entered into Promissory Notes with various lenders, thereby creating a valid contract between the borrower and lender.

56.     With respect to those loans that Defendant serviced, Defendant had knowledge of the contract;

57.     As set forth above, Defendant improperly, intentionally, and without justification, interfered with the performance of the contracts by preventing borrowers from making affordable income-driven payments in accordance with federal law.

58.     As a direct and proximate result of Defendant's interference with the Promissory Notes, Plaintiff and members of the Class have suffered the same sizeable damages, including, but not limited to (i) the difference in the amount paid under a standard repayment plan versus the amount paid when enrolled, or re-enrolled, in an IDR plan; (ii) unpaid

interest added to the principal balance of loans along with amounts accrued as a result of the capitalization of same; and (iii) the financial harm associated with delayed progress towards certain loan forgiveness programs.

## THIRD CLAIM FOR RELIEF
### (Negligent Misrepresentation)

59.     Plaintiffs repeat and re-allege each and every allegation set forth above as if fully set forth herein.

60.     This claim is brought on behalf of the Tortious Interference and Negligent Misrepresentation Class.

61.     Because Defendant accepted a delegation of the loan servicing obligations set forth in the Promissory Note, Defendant had a special relationship to Plaintiff and the Class members that imposed a duty to impart correct information to the latter regarding their enrollment in, and renewal of, IDR plans.

62.     In the course of its dealings with Plaintiff, Defendant carelessly and incompetently supplied Plaintiff with incorrect information regarding the terms of their loans. Namely, Defendant falsely represented to Plaintiff that she did not provide adequate proof of her gross income, and falsely represented to Plaintiff that she was not entitled to continue making income-driven payments.

63.     Defendant intended that Plaintiff would rely on, and be influenced by, the information supplied regarding her student loan.

64.     Plaintiff reasonably relied on the false information that Defendant provided by placing her loans into forbearance status in order to submit additional proof of her gross income to her subsequent loan servicer, even though no such additional proof was required of her.  Thus,

Plaintiff incurred pecuniary losses as a direct result of her reliance on the false information supplied by Defendant.

65.     Defendant is subject to liability for the pecuniary losses suffered by Plaintiff and Class members as a result of their reasonable reliance on the false information provided by Defendant.

## FOURTH CLAIM FOR RELIEF
### (Unjust Enrichment)

66.     Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

67.     This claim is brought on behalf of the Tortious Interference and Negligent Misrepresentation Class.

68.     Defendant was enriched with millions of dollars in payments as compensation for servicing the federal student loans of Plaintiff and the Class.

69.     This enrichment came at the expense of Plaintiffs, whose loan balances were improperly increased because of the actions of Defendant.

70.     Defendant also received oversized payments directly from borrowers who were billed at inaccurate levels as result of Defendant's improper addition of fees, charges, and interest as set forth above.

71.     Defendant benefited from its receipt of this money.

72.     As set forth above, the circumstances were such that equity and good conscience require Defendant to make restitution to Plaintiff and the Class members.

## FIFTH CLAIM OF RELIEF
**(Violations of California Civil Code § 1750 et seq ("CLRA")**

73.     Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

74.     Plaintiff brings this Count on behalf of members of the California Class.

75.     Defendant is a "person" within the meaning of California Civil Code § 1761 (c).

76.     Defendant accepted a delegation of the loan servicing obligations set forth in Plaintiff's Promissory Note, which requires compliance with applicable federal law.  In accepting this delegation, Defendant represented that its loan servicing activities would be performed in accordance with applicable federal law.

77.     Section 1770(a)(5) of the CLRA prohibits representing that goods or services have sponsorship or approval that they do not have.  Defendant violated the CLRA by falsely representing that the following actions had the sponsorship or approval of the federal government:

   a.      Requiring Plaintiff to submit additional proof of gross income even though she had already satisfied the income certification requirements;

   b.      Discontinuing Plaintiff's income-driven payments despite her timely submission of an IDR renewal application and proof of gross income; and

   c.      Capitalizing the accrued interest on Plaintiff's loan despite her timely submission of an IDR renewal application and proof of income.

78.     As a result of Defendant's violations of the CLRA, Plaintiff and members of the California Class have suffered the same sizeable damages, including, but not limited to (i) the difference in amount paid under a standard repayment plan versus the amount paid when enrolled, or re-enrolled, in an IDR plan; (ii) unpaid interest added to the principal balance of

16

loans along with amounts accrued as a result of the capitalization of same; and (iii) the financial

harm associated with delayed progress towards certain loan forgiveness programs.

79.     Plaintiff and members of the California Class seek an order enjoining Defendant's

unfair, unlawful, and/or deceptive practice, declaratory relief, attorney's fees, and any other just

and proper relief available under the CLRA.

**SIXTH CLAIM OF RELIEF**
**(Violations New York General Business Law Sec. 349)**

80.     Plaintiff repeats and re-alleges each and every allegation set forth above as if fully

set forth herein.

81.     Plaintiff brings this Count on behalf of members of the New York Class.  New

York's General Business Law § 349 makes unlawful "[d]eceptive acts or practices in the conduct

of any business, trade or commerce."

82.     In the course of Defendant's business, it engaged in the following deceptive acts

and practices:

   a.     Falsely representing to Plaintiff that she was not entitled to continue

   making income driven payments even though she timely submitted an IDR renewal

   application and proof of gross income; and

   b.     Falsely representing to Plaintiff that she was subject to a capitalization of

   her accrued interest even though she timely submitted an IDR renewal application and

   proof of income.

83.     The actions set forth above occurred in the conduct of trade or commerce.

84.     Because Defendant's deception takes place within the context of the federal

student loan program, it affects the public interest.  Further, Defendant's unlawful conduct

constitutes unfair acts or practices that have the capacity to deceive consumers, and that have a

17

broad impact on consumers at large.

85.    Defendant's conduct proximately caused injuries to Plaintiff and the New York class members.

86.    As a result of these deceptive practices, Plaintiff and members of the New York class have suffered the same sizeable damages, including, but not limited to (i) the difference in amount paid under a standard repayment plan versus the amount paid when enrolled in an IDR plan; (ii) unpaid interest added to the principal balance of loans along with amounts accrued as a result of the capitalization of same; and (iii) the financial harm associated with delayed progress towards certain loan forgiveness programs.

87.    These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

## SEVENTH CLAIM OF RELIEF
### (Violations of The Rosenthal Act, California Civil Code § 1788.17)

88.    Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

89.    Plaintiff brings this Count on behalf of members of the California Class.

90.    Defendant is a "debt collector" under the Rosenthal Act.

91.    The Rosenthal Act prohibits the use of any false representation or deceptive means to collect or attempt to collect any debt.

92.    In the course of collecting on Plaintiff's federal loan, Defendant 1) falsely represented to Plaintiff that she was not entitled to continue making income driven payments despite her timely submission of an IDR renewal application and proof of gross income, and 2) falsely represented to Plaintiff that she was subject to a capitalization of her accrued interest

despite her timely submission of an IDR renewal application and proof of income.  In doing so, Defendant violated the Rosenthal Act.

93.    As a proximate result of Defendant's violations enumerated above, Plaintiff and members of the California Class have been damaged in amounts which are subject to proof.

94.    Because Defendant knowingly and willfully violated the Rosenthal Act, Plaintiff and members of the Class are therefore entitled to statutory damages; actual damages; attorney's fees; and costs.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff requests that this Court enter a judgment against Defendant and in favor of Plaintiff:

A.    Certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiff as representative of the Classes and Plaintiff's counsel as counsel for the Classes;

B.    Declaring, adjudging, and decreeing the conduct alleged herein as unlawful;

C.    Enjoining Defendant from continuing to commit the above-cited violations of law;

D.    Awarding compensatory and punitive damages along with pre- and post-judgment interest;

E.    Granting Plaintiff the costs of suit, including reasonable attorneys' fees and expenses; and

F.    Affording Plaintiff with such other, further, and different relief as the nature of the case may require or as may be determined to be just, equitable, and proper by this Court.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.


EDELMAN, COMBS, LATTURNER, & GOODWIN, LLC


*s/Tiffany N. Hardy*
Tiffany N. Hardy (Lead Counsel) (Bar Number: 511785)
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)
ARDC # 00712094
*Counsel for Plaintiff and the Classes*


Lawrence Katz
LAW OFFICES OF LAWRENCE KATZ PC
445 Central Avenue, Suite 201
Cedarhurst, New York 11516
(516) 374-2118
(516) 706-2404 (FAX)