**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------X
:
:
:
TERI R. SMITH, on behalf of herself and the class  :
members described herein,  :  Case No. 6:18-cv-01329-FJS-ATB
:
:
Plaintiff,  :
:
:
vs.  :
:
:
CONDUENT EDUCATION SERVICES, LLC,  :
f/k/a ACS, ACCESS GROUP, INC., and ACCESS  :
FUNDING 2015-1,  :
:
:
Defendant.

-----------------------------------------------------------------X

### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO SUPPLEMENT ITS MOTION TO DISMISS

On May 28, 2019, in further response to her opposition to Defendant Conduent Education Services, LLC's (CES) motion to dismiss, Plaintiff Teri R. Smith alerted the Court to the disposition of a motion to dismiss in *Olsen v. Nelnet*, No. 18-cv-03081 (D. Neb. 2018), ostensibly in support of her arguments against CES's motion here. ECF No. 27. What she did not alert the Court to is that she also is a named plaintiff in *Olsen*, in which she brings claims predicated upon the same legal theories, involving the same loans, and seeking the same damages as she does in this action. In other words, *Olsen* is a parallel litigation that Smith has duplicated through her complaint here.

CES recently learned of Smith's role in the prior pending action, and now requests that the Court permit it to supplement its motion to dismiss. Courts in the Second Circuit routinely dismiss a suit that is duplicative of a first-filed case in another federal court. Courts that do not

dismiss a later-filed suit outright stay it until the earlier action is resolved. In the interests of judicial economy, and in order to avoid conflicting resolutions of the disputes in this case, the Court should dismiss Smith's claims or, in the alternative, stay them pending the resolution of her claims in *Olsen*.

## BACKGROUND

*Olsen* is a putative class action brought on behalf of student borrowers against Nelnet, Inc. (Nelnet), Smith's student loan servicer, and related parties. *See Olsen*, No. 18-cv-03081, Am. Compl., ECF No. 37 (D. Neb. Sept. 25, 2018).[1] Originally brought by another plaintiff, the parties stipulated to the filing of an amended complaint and, on September 25, 2018—before Smith initiated this action on November 13, 2018—Smith joined the proceeding as a named lead plaintiff. *Id.* The claims in *Olsen* should sound familiar: Smith alleges that she timely submitted her IBR renewal application to CES. *See Olsen* Compl. ¶ 44. Approximately one week after the denial of her IBR renewal, Smith's loan, along with the required processing of her IBR application, was reassigned to Nelnet. *Id.* ¶ 45; *see also* Compl. ¶ 44 (detailing the timing of the reassignment). Nelnet, despite Smith's purportedly valid IBR application, set a monthly payment of $903.34 after assuming Smith's loan. *Olsen* Compl. ¶ 45. On July 20, 2018, Nelnet told Smith that she was approved for IDR[2] but that her monthly payments would not be reduced until September 2018. *Id.* ¶ 46. According to Smith, she could not afford those payments and so decided to place her loans into forbearance, resulting in the capitalization of $860.63 in unpaid interest. *Id.*

---

[1]  A copy of the operative complaint in *Olsen* is attached here as Exhibit 1, and is cited here throughout as "*Olsen* Compl." The complaint in this proceeding will be cited as "Compl."

[2]  CES offers an income-based repayment plan (IBR); Nelnet offers other similar programs collectively referred to as income-driven repayment (IDR). The distinction is not material for purposes of this motion.

These claims mirror those present here. *See* Compl. ¶¶ 28–29 (CES denied Smith's IBR renewal application); *id.* ¶ 30 (Smith's loan was reassigned to Nelnet, which began billing her $903.34 a month); *id.* (Smith placed her loans into forbearance while she applied to Nelnet for IDR enrollment, and an additional $860.63 in interest was capitalized); *id.* ¶ 31 (Smith was not enrolled in IDR for "several months").

| Allegations | *Smith* Complaint | *Olsen* Amended Complaint |
|---|---|---|
| Smith timely submitted her IBR renewal application. | ¶ 28. | ¶ 44. |
| One week following the application's denial, Smith's loan was reassigned to Nelnet. | ¶ 30. | ¶ 45.[3] |
| Nelnet set a $903.34 monthly payment on Smith's loan. | ¶ 30. | ¶ 45. |
| Instead of paying that amount, Smith placed her loan into forbearance, resulting in the capitalization of $860.63 in unpaid interest. | ¶ 30. | ¶ 46. |
| Smith's monthly payment was not lowered for several months. | ¶ 31. | ¶ 46. |

The like allegations in both cases beget other similarities. The proposed class in *Olsen*—which seeks to include borrowers who timely applied for IDR renewal that eventually was approved (after an initial denial, cancellation, or otherwise), *Olsen* Compl. ¶ 49—substantially overlaps with the proposed class here, where Smith seeks to represent borrowers whose

---

[3]     Smith omitted the fact that CES denied her renewal application from her allegations in *Olsen*, instead suggesting disingenuously that Nelnet began charging her a standard monthly payment notwithstanding a pending reenrollment application. *See Olsen* Compl. ¶¶ 44–45.

applications were erroneously denied. Compl. ¶ 34.  And the damages Smith claims in both actions virtually are identical, but cannot be recovered more than once.  *Compare, e.g.*, *Olsen* Compl. ¶ 66, *with* Compl. ¶ 51 (seeking, in general, damages from having to make standard loan payments, the capitalization of unpaid interest, and the delay in qualifying for loan forgiveness).

## ARGUMENT

### I. The Court should allow CES to supplement its still-pending motion to dismiss.

Although, generally, a party may not file a second motion raising arguments that it chose to omit from an earlier motion, *see* Federal Rule of Civil Procedure 12(h)(1), a court retains discretion to permit a party to "expand the grounds of" a motion it already has filed but remains pending before the court.  *See Jenny Yoo Collection, Inc. v. Watters Design Inc.*, Nos. 16-cv-2205, 16-cv-2647, 16-cv-3640, 2017 U.S. Dist. LEXIS 175399, at *18 (S.D.N.Y. Oct. 20, 2017) (quoting *MacNeil v. Whittemore*, 254 F.2d 820, 821 (2d Cir. 1958)).  The relevant factors for allowing a party to supplement its earlier-filed motion include whether a hearing on the motion already occurred, the delay in raising the new arguments, the inadvertence of the earlier omission, and whether the movant is acting in good faith.  *See id.* at *18–19.

Those factors weigh in favor of CES's application here.  CES was not aware of Smith's involvement in *Olsen* until just recently, when it pulled the docket in that matter subsequent to Smith filing her notice of supplemental authority with this Court.  Accordingly, CES's failure to seek dismissal based on a prior pending action was inadvertent.  CES now seeks to make this argument in good faith and soon after CES learned that such an argument was available.  Most importantly, the Court has not yet ruled on CES's motion to dismiss the complaint and, presuming Smith is entitled to file supplemental opposition, Smith will not be prejudiced by the additional arguments.  In fact, and as discussed below, allowing this duplicative litigation to

4

proceed unchallenged only risks inconsistent adjudications and a waste of the Court's resources. The Court should allow CES to supplement its motion to seek dismissal—or, in the alternative, a stay—of Smith's claims pending resolution of her mirror claims in *Olsen*. *See, e.g.*, *id.* at *19 (allowing party to supplement motion to dismiss after finding, in part, "that there is no indication that their failure to make the venue argument was intentional and that there is no evidence of bad faith").

## II. The Court should dismiss or stay this action pending resolution of Smith's duplicative claims in *Olsen*.

District courts have broad authority to dismiss duplicative proceedings in order to conserve judicial economy and prevent the inconsistent adjudication of similar disputes. "[W]hen identical or substantially similar parties and claims are present in two separate lawsuits, the first-filed lawsuit is presumptively entitled to priority." *Andreas-Moses v. Hartford Fire Ins. Co.*, No. 16-cv-1387, 2017 U.S. Dist. LEXIS 180420, at *5 (N.D.N.Y. Oct. 30, 2017) (citing *Emp'rs Ins. of Wausau v. Fox Entm't Grp. Inc.*, 522 F.3d 271, 274–75 (2d Cir. 2008); *In re: Cuyahoga Equip. Corp.*, 980 F.2d 110, 116–17 (2d Cir. 1992)). Under this doctrine, a district court has wide discretion to "stay or dismiss" the second, duplicative suit. *Curtis v. Citibank*, 226 F.3d 133, 138 (2d Cir. 2000) (explaining that such flexibility is required because "of the obvious difficulties of anticipating the claim or issue-preclusion effects of a case that is still pending"). The purpose of this rule is to "avoid[] duplicative litigation, promote[] judicial economy, and protect[] parties from 'the vexation of concurrent litigation over the same subject matter.'" *Demuth v. N.Y. State Police*, Nos. 18-cv-0796, 18-cv-0936, 2018 U.S. Dist. LEXIS 151293, *4–5 (N.D.N.Y. Aug. 30, 2018) (quoting *Curtis*, 226 F.3d at 138).

The two cases need not be identical in every respect. "[R]ather, [the] focus [is] on whether the two claims arise from the same 'nucleus of operative fact.'" *Davis v. Norwalk Econ.*

5

*Opportunity Now, Inc.*, 534 F. App'x 47, 48 (2d Cir. Aug. 29, 2013); *see also Andreas-Moses*, 2017 U.S. Dist. LEXIS 180420, at *8 (proceedings only must be "substantially similar"). The operative question is whether the proceedings pose "essentially the same factual background and legal questions." *Lopez v. Ferguson*, 361 F. App'x 225, 226 (2d Cir. Jan. 19, 2010). To answer this, "[c]ourts generally look to the identity of the parties, legal claims, factual allegations including temporal circumstances, and the relief sought to determine if the complaint is repetitive or malicious." *Bester v. Taylor*, No. 18-cv-707, 2018 U.S. Dist. LEXIS 103833, at *4 (N.D.N.Y. June 21, 2018) (quotation omitted). The parties, issues, and other circumstances do not need to be the same but only must "substantial[ly] overlap." *Wyler-Wittenberg v. MetLife Home Loans, Inc.*, 899 F. Supp. 2d 235, 244 (E.D.N.Y. 2012); *see also Int'l Controls & Measurements Corp. v. Honeywell Int'l, Inc.*, No. 5:12-cv-1766, 2013 U.S. Dist. LEXIS 127960, at *56 (N.D.N.Y. Sept. 9, 2013).

Smith's complaint presents the classic duplicative suit, and the Court should dismiss this action to allow Smith to litigate her substantially similar claims in her first forum of choice.

*First*, the relief Smith seeks in both actions is almost identical; essentially, Smith seeks to recover *twice* for the same supposed harm. This is because the damages Smith conjures in this case entirely subsume the damages in *Olsen*. Here, Smith seeks "(i) the difference in the amount paid under the standard repayment plan versus the amount paid when enrolled, or re-enrolled, in an IBR plan; (ii) unpaid interest added to the principal balance of loans along with amounts accrued as a result of the capitalization of same; and (iii) the financial harm associated with lost progress towards loan forgiveness." *See, e.g.*, Compl. ¶ 51. But Smith never made payments under the standard plan to CES—her loan was reassigned to Nelnet immediately after

her IBR application was denied. *See* Compl. ¶¶ 29–30. The alleged harms related to the capitalization of interest on her loan and her exclusion from the IBR program occurred after Nelnet became Smith's loan servicer—the exact damages, in other words, that she seeks in *Olsen*. Such double-dipping would lead to an inflated recovery or inconsistent decisions about the nature and extent of harms Smith suffered. Smith should be required to litigate her claims in *Olsen* before taking another bite at the apple here.

*Second*, the proposed plaintiff classes in each action significantly overlap.[4] Both reach to include student borrowers who sought to reenroll in an IDR plan; one class is of those whose renewal applications were denied, Compl. ¶ 34, and the other is of those whose renewal applications *eventually* were approved, whether (like with Smith) after an initial denial or for some other reason, *Olsen* Am. Compl. ¶ 49.[5] These classes may not be identical, but they each encompass many of the same individuals—indeed, Smith purports to be a member of each.[6] Even

---

[4] Of course, Smith sued different defendants in each of her parallel actions, but that does not impact the potentially preclusive effect of a disposition against Smith in her first-filed action. *See, e.g.*, *Antoine v. CitiMortgage, Inc.*, No. 15-cv-5309, 2017 U.S. Dist. LEXIS 43484, at *16 (E.D.N.Y. Mar. 24, 2017) (applying the doctrine of defensive non-mutual collateral estoppel to bar a plaintiff from litigating the same claim from an earlier suit against a different defendant); *Jasper v. Sony Music Entm't, Inc.*, 378 F. Supp. 2d 334, 343 (S.D.N.Y. 2005) ("By binding the plaintiff to earlier judicial decisions in which he was a party, defensive collateral estoppel precludes a plaintiff from getting a second bite at the apple merely by choosing a new adversary."). Nor does it outweigh the other substantial similarities between the two cases. *See, e.g.*, *Lopez*, 361 F. App'x at 226 (affirming dismissal of second-filed action even though the defendants were not the same).

[5] In both actions, the plaintiffs also propose various subclasses that, other than variations in the operative claim and class-member domicile, share the same definitions.

[6] Smith's involvement as a named plaintiff in each action raises conflict-of-interest issues that likely will preclude her from being an adequate representative of the proposed class here, an argument that CES intends to make should Smith's claims survive and she seek to certify a class.

7

where the number of overlapping class members may be unknown, cases are substantially similar where "the class definitions themselves demonstrate that at least some of the same individuals would be included in both." *Nicholson v. Nationstar Mortg. LLC of Del.*, Nos. 17-cv-1373, 17-cv-8737, 18-cv-3075, 2018 U.S. Dist. LEXIS 113011, at *18 (N.D. Ill. July 6, 2018) (collecting cases); *see also, e.g.*, *Castillo v. Taco Bell of Am., LLC*, 960 F. Supp. 2d 401, 404 (E.D.N.Y. 2013) (granting first filed motion where "[t]he class description is the same, as are the potential plaintiffs"); *Adoma v. Univ. of Phoenix, Inc.*, 711 F. Supp. 2d 1142, 1148 (E.D. Cal. 2010) ("[T]he proposed classes for the collective actions are substantially similar in that both classes seek to represent at least some of the same individuals.").

*Finally*, Smith's dual actions each proceed on similar legal theories, the resolution of which in one action may be dispositive on the other. Smith asserts in both that her loan servicer breached the promissory note governing her loan (or, in the alternative, the implied covenant of good faith and fair dealing) by failing to adhere to federal law, *see Olsen* Compl. ¶¶ 68–74; Compl. ¶¶ 46–52; that her loan servicer tortiously interfered with the administration of her federal student loans, *see Olsen* Compl. ¶¶ 75–81; Compl. ¶¶ 53–58; that her servicer negligently gave Smith false "information regarding the terms of [her] loans," *see Olsen* Compl. ¶¶ 82–88; Compl. ¶¶ 59–65; and that, because of this wrongdoing, her servicers were unjustly enriched, *see Olsen* Compl. ¶¶ 95–101[7]; Compl. ¶¶ 66–72. Although the alleged wrongdoing of CES differs slightly from Nelnet's—CES's alleged wrongdoing relates to its denial of her application, and Nelnet's relates to delays in approving her IDR application and the assessment of standard repayment terms in the interim—the disposition of Smith's claims in *Olsen* undoubtedly would inform (if not have a

---

[7] The paragraphs in the *Olsen* Amended Complaint are mis-numbered and have been corrected here.

preclusive effect on) the merits of Smith's claims here by deciding, for example, the standards applicable to the servicer's administration of the IBR program under federal law, including Smith's eligibility for IBR in the first instance.  The outcome of *Olsen* will have even a greater bearing on the relief available to Smith and will decide, for example, whether her claimed injury of delay in becoming eligible to qualify for loan forgiveness is too speculative.  Importantly, the Court in *Olsen* already has disposed of some of Smith's claims, *see Olsen*, No. 18-cv-3081, ECF No. 45 (dismissing the plaintiffs' tortious interference and unjust enrichment claims), and discovery has commenced on the remaining claims.  That the Court in the prior pending action already has advanced the litigation of parallel claims weighs in favor of applying the first-filed rule.  *See D'Antuono v. Reliance Standard Life Ins. Co.*, No. 18-cv-347, 2019 U.S. Dist. LEXIS 42065, at *3–4 (N.D.N.Y. Mar. 15, 2019) (enforcing the rule where "partial motions to dismiss ha[d] already been granted" and other actions taken in the parallel action).

    Smith brings three additional state statutory claims in this action that are not present in *Olsen*, but that is "insufficient to render the cases dissimilar." *Tate-Small v. Saks Inc.*, No. 12-cv-1008, 2012 U.S. Dist. LEXIS 76081, at *12 (S.D.N.Y. May 31, 2012); *see also Wyler-Wittenberg*, 899 F. Supp. 2d at 245 ("[T]he presence of New York state-law claims by some of the Plaintiffs in [the second-filed action] does not sufficiently distinguish it from the [first-filed] action so as to preclude application of the first-filed rule.") (internal quotations omitted)).  This is particularly true here because the state-law fraud claims in *Smith* "apply the same principles" as Smith's common-law misrepresentation claim (brought in both actions).  *Cf. Andreas-Moses*, 2017 U.S. Dist. LEXIS 180420, at *8 (finding cases duplicative where the claims in each, although brought under different statutes, "apply the same principles").  For the same reason, the litigation

of Smith's misrepresentation claim in *Olsen* undoubtedly will tread the same ground as would litigation of Smith's state law claims here.

## CONCLUSION

Smith was denied renewal of her student loan IDR plan and brought a case against her current loan servicer in Nebraska federal court. A little more than a month later, Smith filed another action in this Court, this time against her former servicer, seeking to represent a similar class requesting the same damages stemming from the same alleged harms involving the same student loan. Smith now is litigating these cases in parallel, clearly hoping to double the odds of recovery on her speculative, long-shot claims.

The Court has broad authority to conserve its resources and avoid the complications that may arise from an inconsistent adjudication in another federal court. Smith joined the action in *Olsen* first, and should be required to litigate her claims in that order as well. CES respectfully requests that this Court dismiss Smith's complaint, or in the alternative, stay it pending resolution of the dispute in *Olsen*.

DATED: September 19, 2019

Respectfully submitted,

/s/ *Michael R. McDonald*
Michael R. McDonald
John C. Grugan
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Telephone: 215.665.8500
Facsimile: 215.864.8999
mcdonaldm@ballardspahr.com
gruganj@ballardspahr.com

*Attorneys for Defendant Conduent Education Services, LLC*