# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TERI R. SMITH, on behalf of herself and the class members described herein, ) ) ) ) Plaintiff, ) ) v. ) ) CONDUENT EDUCATION SERVICES, ) LLC, ) ) ) Defendant ) | Case No. 6:18-cv-1329 (FJS/ATB) |

**PLAINTIFF'S OBJECTION TO**
**DEFENDANT'S MOTION TO SUPPLEMENT**

Cassandra P. Miller (*Pro Hac Vice*) (IL # 6290238)
Tiffany N. Hardy (NY #511785)
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 South Clark Street, Ste. 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)
courtecl@edcombs.com

Lawrence Katz (NY #2038461)
LAW OFFICES OF LAWRENCE KATZ
70 East Sunrise Highway, Suite 500
Valley Stream, NY 11581
(516) 374-2118
lkatz@lawkatz.com

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION..................................................................................................1 |
| II. | THE TWO CASES ARE NOT DUPLICATIVE.................................................1 |
| III. | THE CASES CITED BY CES DO NOT SUPPORT IT.......................................3 |
| IV. | CES' MOTION IS UNTIMELY..........................................................................7 |
| V. | CONCLUSION....................................................................................................8 |

i

I.  **INTRODUCTION**

Ms. Smith's loan was serviced by Conduent ("CES") before it was serviced by Nelnet Inc. ("Nelnet"), Smith's current loan servicer.  CES and Nelnet mishandled separate income-based repayment applications.  CES and Nelnet are competing servicers of federal student loans and are not alleged to have acted in concert in any manner.

On September 25, 2018, Ms. Smith was added to an existing putative class action brought against Nelnet in the District of Nebraska.   Am. Cmplt., ECF No. 37,  18cv03081 (D. Neb. Sept. 25, 2018) ("Nebraska Nelnet case")  The instant case is a putative class action brought against CES, Ms. Smith's previous loan servicer, for a separate series of improper actions taken by CES in the course of servicing the same loans.  It was filed on November 13, 2018.  Defendant CES filed a Motion to Dismiss for Failure to State a Claim on December 19, 2018.  Briefing of the motion was completed on February 11, 2019, since which time the parties have been awaiting a ruling on the motion.

CES  has actually known about the Nebraska Nelnet case  for at least 4 months.  On May 28, 2019, Ms. Smith filed the Nebraska court's ruling on Nelnet's motion to dismiss.  The caption of plainly identifies "Teri R. Smith" as a plaintiff.

On September 19, 2019, CES filed the instant Motion to Supplement its Motion to Dismiss, seeking leave to make additional arguments and request new relief.   The instant motion is based on Smith's involvement in the Nebraska Nelnet case.   CES wrongly asserts that the cases are "duplicative," and seeks leave to request a dismissal or stay on that ground.  CES' motion has no basis, and allowing its motion to supplement would further delay the instant case.

II.  **THE TWO CASES ARE NOT DUPLICATIVE**

CES' claim that the cases are "duplicative" is false.  Although the legal claims in each case are similar in nature, they are based on separate acts independently taken by two unrelated defendants, CES and Nelnet.  In the instant case, Smith alleges that CES erroneously and improperly *denied* her application to renew an Income Driven Repayment Plan, causing her financial harm. (Cmplt.,  ¶¶ 28-29).

Shortly thereafter, Smith's loans were re-assigned to Nelnet for servicing. In the Nebraska complaint, Smith alleged that Nelnet delayed the processing of her IDR renewal application for a period of several months (Am. Cmplt., ECF No. 37, 18cv03081, at ¶¶ 46-47); billed Plaintiff at improper amounts (*Id.* at ¶ 45); and improperly capitalized Smith's accrued interest (*Id.*).

CES' claim that the proposed class in the Nebraska Nelnet case "substantially overlaps with the proposed class here." (Def. Mem., p. 3). To the contrary, the classes are defined so as to be mutually exclusive. The Nebraska complaint is limited to "individuals with federal student loans serviced by [Nelnet]." Am. Cmplt., ECF No. 37, 18cv03081, ¶ 49. The class in the instant case, by contrast, is limited to "individuals with federal student loans serviced by CES." *See* Cmplt. at ¶ 34. Because each class is composed of borrowers with different loan servicers, they have no overlap whatsoever.

CES and Nelnet are not affiliated and did not act in concert. They are competing organizations in the business of servicing federal student loans. CES is not responsible for the conduct of Nelnet. Nelnet is not responsible for the conduct of CES. CES is not a defendant in the *Nelnet* case and no defendant in the *Nelnet* case is named here.

Similarly, the proposed classes in the two cases do not overlap. The classes in this case are defined in terms of persons injured by CES's wrongful conduct while CES serviced their loans. The classes in the Nebraska Nelnet case are defined in terms of persons injured by Nelnet's wrongful conduct while Nelnet serviced their loans. While as a result of transfers of servicing and common improper industry practices there are a few individuals, including Ms. Smith, who were subjected to similar improper conduct by two or more servicers, and may be members of classes in both cases, that does not make the cases "parallel litigation."

The situation is similar to two securities fraud cases involving unrelated issuers and defendants. They do not become "parallel litigation" because some people invested in both companies.

Membership in a Nelnet class would not afford redress for any conduct engaged in by

2

CES, or vice versa.

Contrary to CES' contention, the damages in the two cases do not overlap. While CES falsely claims that Smith attempts to recover "twice for the same proposed harm" (Def. Mem., p. 6), in the present case Ms. Smith seeks to be compensated by CES for their improper servicing actions taken in April 2018, while in the Nebraska Nelnet case she seeks to be compensated by Nelnet for its improper servicing actions taken from May 2018 to July 2018.

CES claims that "the damages Smith conjures in this case entirely subsume the damages in *Olsen*." (Def. Mem., p. 6). CES claims that "the alleged harms related to the capitalization of interest on her loan…occurred after Nelnet became Smith's loan servicer – the exact damages, in other words, that she seeks in Olsen." (Def. Mem., p. 7).

This is not true. Pursuant to 34 C.F.R. §682.215 (e)(7), a borrower's accrued interest is capitalized if her Income Driven Repayment plan in not timely renewed before its expiration. In the instant case, Smith alleged that these damages were caused by CES, who improperly rejected her renewal application. (*See* Cmplt. at ¶ 29). In the Nebraska Nelnet case, Ms. Smith alleged that Nelnet improperly delayed the processing of her renewal application, forcing her to enroll in a forbearance. (Am. Cmplt., ECF No. 37, 18cv03081, ¶ 46). This forbearance caused her to incur a *second* interest capitalization pursuant to 34 C.F.R. §682.211 (a), which provides that any interest that accrues during periods of forbearance must be capitalized. Thus, Smith has alleged, in separate lawsuits, that *both* servicers caused her to incur improper interest capitalizations at different times as a result of different actions. CES fails to explain why Smith is not entitled to be compensated for both harms.

## III.   THE CASES CITED BY CES DO NOT SUPPORT IT

CES concedes that courts may dismiss a proceeding as duplicative only when the two suits involve "substantially similar parties and claims." (Def. Mem., p. 5, citing *Andreas-Moses v. Hartford Fire Ins. Co.*, 16cv1387, 2017 WL 5634709, 2017 U.S. Dist. LEXIS 180420 (N.D.N.Y. Oct. 30, 2017)). Here, the claims are brought against different defendants, based on their own individual conduct, on behalf of mutually exclusive plaintiff classes.

This case and the Nebraska Nelnet case do not "arise from the same nucleus of operative fact." (Def. Mem., p. 5, citing *Davis v. Norwalk Econ. Opportunity Now, Inc.*, 534 Fed.Appx. 47, 48 (2d Cir. Aug. 29, 2013)). The operative fact that gives rise to the instant case occurred in April 2018, when CES erroneously rejected Smith's application to renew an Income-Driven Repayment Plan. *See Cmplt.* at ¶¶ 28-30. By contrast, the operative facts that give rise to Ms. Smith's cause of action in the Nebraska Nelnet case were a series of actions taken by Nelnet from May 2018 to July 2018. *(*Am. Cmplt., ECF No. 37, 18cv03081, ¶¶ 45-48) Thus, the causes of action are entirely separate; they are based on the actions of different parties taken during different time periods.

The actions themselves are qualitatively distinct. In the instant case, Smith alleges that CES erroneously and improperly *denied* her application to renew an Income Driven Repayment Plan, causing her to suffer financial harm. By contrast, in the Nebraska Nelnet case, Smith alleged that Nelnet *delayed* the processing of her IDR renewal application for a period of several months (Am. Cmplt., ECF No. 37, 18cv03081, at ¶¶ 46-47); *billed* her at improper amounts (*Id.* at ¶ 45); and improperly *capitalized interest.* (*Id.*).[1] Smith does not seek relief against CES for any of Nelnet's actions, although she does note that CES transferred the loan to Nelnet, simply to explain what happened to it.

For this reason, the table included in Defendant's brief is misleading. It does not identify *claims* lodged against both parties. It merely identifies *facts* that are stated in both complaints to set forth the history of Smith's account. (Def. Mem., p. 2).

Defendant cites *Andreas-Moses* in support of its claim that the instant case is duplicative. However, in that case, a single defendant was being forced to litigate identical claims in two different venues. Moreover, both cases were brought on behalf of virtually identical classes of

---

[1] CES claims that Smith was "disingenuous" in omitting from the *Olsen* complaint that CES had denied her Income-Driven Repayment Plan application before the re-assignment of her loans to Nelnet. (Def. Mem., n. 3). In fact, Smith omitted this fact from the *Olsen* complaint because it bore no relevance. As Smith's loan servicer, Nelnet had an independent duty to perform its own review of Smith's application, which it did negligently.

plaintiffs: "former and present employees falling into the same job classification." 2017 WL 5634709 at *1-2. In the instant case, not only are the Defendants different; the plaintiff classes are mutually exclusive by definition. The putative class in the Nebraska Nelnet case is limited to Nelnet borrowers, while the putative class in the instant case is limited to CES borrowers.

The remaining cases cited by CES do not support its position. In *Employers Ins. of Wausau v. Fox Entm't Grp., Inc.*, 522 F.3d 271 (2d Cir. 2008), insurance companies filed suit against Fox Entertainment, Fox Film, Fox Television, and the New World Entities, seeking a declaration that they did not have to cover certain copyright infringement claims. A month later, Fox Film, Fox Television, and the New World Entities filed their own complaint against the insurance companies, alleging breach of the policies by not covering those claims. The court held that the two lawsuits were "parallel," and that the "first to file" rule precluded the second filed case because the cases were "essentially the same lawsuit involving the same parties and the same issues." *Id*. at 274. In other words, the two actions were "competing lawsuits," giving the first suit "priority." *Id*. at 275.

The instant case, however, is not "in competition" with the Nebraska Nelnet case. The defendants are unrelated companies, and the plaintiff classes are mutually exclusive because they involve the actions of different parties.[2]

In *Curtis v. Citibank*, 266 F.3d 133 (2d Cir. 2000), a second lawsuit was dismissed as "duplicative" of the first because it was (1) brought by the same class of plaintiffs, (2) against the same employer, (3) arose from the same set of operative facts and (4) represented an effort to assert matters which plaintiffs were not permitted to assert in the first action as untimely. This bears no similarity to the instant case, where the plaintiff classes are mutually exclusive, the defendants are different, and the operative facts are distinct.

CES's reliance on *Lopez v. Ferguson*, 361 Fed. Appx. 225 (2d Cir. Jan. 19, 2010) is

---

[2] CES states, in conclusory fashion, that Smith's involvement in both cases "raises conflict-of-interest issues that will likely preclude her from being an adequate representative of the proposed class here." (Def. Mem., n. 6). However, CES offers no explanation as to how Smith's involvement in both cases raises a conflict of interest. In any event, this claim bears no relevance to the instant motion.

5

similarly misplaced. (Def. Mem., p. 6). That case makes clear that the "identity of the parties" is the paramount consideration in such cases. "[P]laintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time." (361 Fed. Appx., at 226)

CES also cites *Antoine v. CitiMortgage Inc.*, 15cv5309, 2017 WL 1133354, 2017 U.S. Dist. LEXIS 43484 (E.D.N.Y., Mar. 24, 2017), for the proposition that a case may be dismissed as duplicative of another case even if it was brought against a different defendant. (Def. Mem., p. 7 n. 4). *Antoine* does not stand for that proposition at all. Rather, it involved the doctrine of *issue preclusion*, and merely noted that an adjudicated fact in one case may not be re-litigated in a separate case involving the same question of fact. This doctrine has no application to the instant motion because no facts have yet been adjudicated in either case.

CES's reliance on *Lopez v. Ferguson*, 361 Fed. Appx. 225 (2d Cir. 2010), is also misplaced. CES cites *Lopez* for the proposition that a Plaintiff's second-filed case may be dismissed as duplicative of a previous action brought by the Plaintiff "even if the defendants were not the same." (Def. Mem., n. 4). *Lopez*, however, is readily distinguishable. In that case, a prison inmate was a member of a class pending against the Division of Parole and its commissioner. A class member, Lopez, brought a duplicative suit against the commissioner and two fellow officials for the same conduct. All of the defendants were sued in their official capacities and the relief sought in both cases was a reduction in the amount of prison time certain inmates would have to serve, so the real party in interest was the State of New York, regardless of what state officials were named. Both actions were defended by the Attorney General.

Here, as discussed, Smith is suing two unrelated companies, each for their own improper conduct causing different damages.

As mentioned, Smith's membership in both classes is entirely coincidental, and it is unlikely that a significant number of other borrowers would belong to both classes. In any event, Defendants correctly point out that two cases are considered substantially similar "when the class definitions *themselves* demonstrate that at least some of the same individuals would be

included in both." (Def. Mem., p. 8, citing *Nicholson v. Nationstar Mort. LLC of Del.*, 17cv1373 and 17cv8737, 2018 WL 3344408, *5-6, 2018 U.S. Dist. LEXIS 113011 (N.D. Ill. July 6, 2018) (collecting cases) (emphasis added)).  Because the classes here are mutually exclusive – borrowers who loans are serviced by Nelnet, and borrowers whose loans are serviced by CES – the definitions *themselves* do not suggest overlap, even if a negligible number of persons belong to both classes.

CES asserts that the two cases are based on the same legal theories.  That is true, in the same sense that most automobile negligence cases are based on the same legal theories.  But no one would consider all such cases to be "parallel litigation."  Even if the same person is the struck on different occasions by different defendants, the cases are not "parallel litigation."  Each defendant is responsible for whatever harm it caused, and the plaintiff can pursue each defendant.

**IV.     CES' MOTION IS UNTIMELY**

CES delayed filing the instant motion for nearly four months after it received actual knowledge of Ms. Smith's involvement in the Nebraska Nelnet case.  Yet, CES claims that it did not learn of Smith's involvement in the Nebraska Nelnet case until "just recently," and that it filed the instant motion "soon after CES learned that such an argument was available."  (Def. Mem., p. 4).

When considering whether to allow a party to untimely supplement a motion to dismiss, one of the primary factors to consider is "the time interval between the omission and attempted correction."  *See  Nycal Corp. v. Inoco PLC*, 949 F. Supp. 1115, 1119 (S.D.N.Y. 1997).  CES waited nearly four months after knowing of Smith's involvement in both cases before filing the instant motion.  CES cannot justify this delay, nor has it attempted to do so.  Moreover, CES erroneously claims that Smith "will not be prejudiced" if CES is permitted to seek a stay of the instant proceedings.  (Def. Mot., p. 4).  But the Second Circuit has held that "[p]rejudice may be presumed as a matter of law in certain cases," such as when "the delay was lengthy and

inexcusable." *U.S. ex rel. Drake v. Norden Sys., Inc.*, 375 F.3d 248, 256 (2d Cir. 2004). Defendant's existing motion to dismiss has been fully briefed since February 11, 2019. *Norden Sys.*, 375 F.3d at 257 (noting that, when assessing whether a party's delay has caused prejudice, courts should consider the effect of "district court calendar congestion."). To allow further delay – which is precisely what CES seeks in the form of a stay – would amount to prejudice as a matter of law. Thus, Defendant's Motion to Supplement should be denied.

## V.     CONCLUSION

There is simply no basis for CES's suggestion that persons injured by CES should be denied redress because some of them may also have been injured by Nelnet at different times. The *Nelnet* case would not address any claims against CES and would not provide anyone with relief based on CES's conduct.

The request to "supplement" is improper and should be denied.

                                  Respectfully submitted,

                                  <u>s/ Cassandra P. Miller</u>

Cassandra P. Miller (*Pro Hac Vice*) (IL # 6290238)
Tiffany N. Hardy (NY #511785)
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 South Clark Street, Ste. 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)
courtecl@edcombs.com

                                  <u>s/Lawrence Katz</u>

Lawrence Katz (NY #2038461)
LAW OFFICES OF LAWRENCE KATZ
70 East Sunrise Highway, Suite 500
Valley Stream, NY 11581
(516) 374-2118
lkatz@lawkatz.com

## **CERTIFICATE OF SERVICE**

      I, Cassandra P. Miller, hereby certify that on Tuesday, October 8, 2019, I caused a true and accurate copy of the foregoing document to be filed via the courts CM/ECF online system, which sent notice via email to all counsel of record.

                                                                      s/ Cassandra P. Miller  
                                                                      Cassandra P. Miller

Cassandra P. Miller (*Pro Hac Vice*) (IL # 6290238)  
Tiffany N. Hardy (NY #511785)  
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC  
20 South Clark Street, Ste. 1500  
Chicago, Illinois 60603  
(312) 739-4200  
(312) 419-0379 (FAX)  
Email address for service:  courtecl@edcombs.com